HEINZ SALM, Judgment Creditor, *v.* MICHAEL KRIEG (KREIG), Judgment Debtor.

County Court, Columbia County, July 25, 1944.

*Theodore H. Kline* for Marlin-Rockwell Corporation appearing specially.

*John N. McLaren* for judgment creditor.

CONNOR, J. This decision involves the constitutionality of section 916 of the Civil Practice Act, as amended by chapter 625 of the Laws of 1940. The particular question involved has never been passed upon by the courts of the State since the amendment.

Heretofore the plaintiff and judgment creditor, Heinz Salm, obtained a judgment against Michael Kreig who was then a resident of the city of Hudson and State of New York, in the City Court of the City of Hudson, and a transcript of judgment was thereafter filed, making said judgment a judgment of the County Court. On the 25th day of January, 1944, there was presented to this court a garnishee execution directed against the Marlin-Rockwell Corporation, and the papers on their face indicated the said Michael Kreig was employed in the State of New York by the Marlin-Rockwell Corporation. The Marlin-Rockwell Corporation now appears specially and asks that the execution against the wages be vacated upon the following facts: the Marlin-Rockwell Corporation is a Delaware corporation; it filed a certificate doing business in the State of Connecticut where it does an extensive business in a plant engaged in war work at Plainville, Connecticut. The corporation is also authorized to do business in the State of New York, and has a plant likewise devoted to war work at Jamestown, New York. It has a totally owned subsidiary known as MRC Bearings Service Company, a Connecticut corporation and maintains offices for the transaction of business in New York City. At that place the Marlin-Rockwell Corporation has its name listed in the Manhattan telephone book, and has its name printed on the window of the office of the MRC Bearings Service Company. No records are kept or wages are paid at said office in New York City. They maintain that Michael Kreig at no time during his employment by them lived in the State of New York, but rather that he has continuously lived in the State of Connecticut, his employment is in the State of Connecticut, his contract was consummated in the State of Connecticut, the services rendered by him in the State of Connecticut, his wages are paid him in the State of Connecticut, and that the said Marlin-Rockwell Corporation has no assets belonging to the said Michael Kreig in the State of New York, nor is it indebted to him in the State of New York.

The law governing the garnishment of wages will be found in section 684 of the Civil Practice Act of the State of New York. But the courts have always applied the rule that a garnishment is permitted in all cases where a warrant of attachment would apply. (*Morris Plan Co.* v. *Miller,* 102 Misc. 470; *Commercial Credit Corp.* v. *Young,* 258 App. Div. 323; *Brock* v. *Brock,* 173 Misc. 172.)

The law governing this type of an attachment is found chiefly in section 916 of the Civil Practice Act. The statute was amended in 1936 and was entirely rewritten in 1940. By the amendment of 1936, six types of property, the subject of attachment, were set forth. There seems to be no doubt that prior to 1936 a garnishment of salary due or to become due from a corporation authorized to do business in this State, would not lie where the nonresident debtor performs no services and in fact receives no remuneration here. (*Dos Passos* v. *Morton,* 218 App. Div. 154; *Cohen* v. *Enterprise Distributing Corporation,* 214 App. Div. 238; *American Dry Ice Corp.* v. *Delancey Chemical Corp.,* 155 Misc. 661; *Brock* v. *Brock,* 173 Misc. 172, *supra.*)

After the amendment of 1936 the Supreme Court of New York held that the amendment had changed the situation and the words " any indebtedness due or to become due from a non-resident or a foreign corporation, upon whom or which service of process may be made within this state, to any person whether a non-resident or a foreign corporation " having been added to the statute, an attachment would lie and therefore garnishment execution must also issue. (*Brock* v. *Brock,* *supra.*)

When the statute was rewritten in 1940, it read as follows (Civ. Prac. Act, § 916, subd. 3) : " A debt, arising under or on account of a contract, not represented by a bond, promissory note or other instrument for the payment thereof, negotiable or otherwise, whether or not the said debt is past due, or yet to become due, to a resident or non-resident person or corporation, ·from a resident or non-resident person or corporation, upon whom or which service of process may be had within the county, *provided that an action could be maintained by the defendant within the state for the recovery of such debt at the maturity thereof or where the debt consists of a deposit of money not to be repaid* at a fixed time but only upon a special demand, that such demand therefor could be duly made by defendant within the state. The levy of the attachment thereon is deemed a levy upon, and a seizure of all the rights of the defendant in or to the said debt." (Italics supplied.)

The judgment creditor questions the fact that Kreig is a resident of the State of Connecticut. I find, however, from the moving papers that he is a resident of that State.

Carmody's New York Pleading and Practice (Vol. 7, p. 383), discussing this subject, states: "It is necessary, in discussing nonresidence as a ground for attachment, to keep in mind the distinction between domicil and residence. Domicil is the place where a person intends eventually to return and thereto remain, while residence comprehends no more than a fixed abode for the time being, as distinguished from a place of temporary sojourn. The word 'residence' means the abode or place where one actually lives. It implies an established abode fixed permanently for a time for business or other purposes, although there may be an intent existing all the while to return to the true domicil. Residence in the sense of the attachment provisions is not legal domicil, but actual place of abode, temporary or permanent, at which service of process may be lawfully made. A person may have a domicil in this state, but, for attachment purposes, be a nonresident, if he actually resides elsewhere."

Insofar as section 916 of the Civil Practice Act, as amended by chapter 625 of the Laws of 1940, purports to vest a sheriff of this State with interstate powers it is unquestionably unconstitutional. Except for procedural methods there is no difference between the attachment of tangible personal property and of intangible personalty. If the Legislature can authorize the attachment beyond its borders of the one, it can authorize the attachment of the other, and if it could authorize garnishment of wages under the present facts, it could likewise authorize a New York State sheriff to attach the machinery of the Marlin-Rockwell Corporation at its factory at Plainville, Connecticut. Such, I believe, was not the legislative intent, rather it was the formulation of constitutional procedure for the attachment of intangible personalty of a foreign corporation within the State.

The decisions of the courts on the law of attachment, I believe, thoroughly substantiate this conclusion. The remedy of attachment is of very early origin. Its use can be traced back beyond the reign of Edward I, until lost in the imperfect records of earlier courts. It is a proceeding in rem. It exists as a provisional remedy only when authorized by statute.

Section 910 of the Civil Practice Act provides that the warrant of attachment must require the sheriff to attach and safely keep so much of the property within his county which the defendant has. Section 914 of the Civil Practice Act provides

that where a warrant of attachment has been issued against a foreign corporation, the sheriff may levy upon any sum remaining unpaid upon a subscription to the capital stock of the corporation made by a person *within the county* or upon one or more shares of the stock *therein* held by such person, etc. It will be noted that in both of these sections emphasis is placed upon the *res* within the county. In *Plimpton et al.* v. *Bigelow* (93 N. Y. 592) there was an attempt to attach shares of stock of a foreign corporation which were owned by the defendant, and the certificate of which was in his possession at his domicile in the foreign State, by causing the sheriff to make a levy upon an officer of the corporation in the State of New York. It was held that section 647 of the Code of Civil Procedure (now Civ. Prac. Act, § 915) did not apply, for the reason that the fundamental condition of attachment procedure did not exist; viz., that the *res* must be within the jurisdiction of the court.

In *National Broadway Bank* v. *Sampson* (179 N. Y. 213, 222) it was held that '' Attachment suits are in the nature of actions *in rem,* and are especially so when they proceed without jurisdiction of the person of the debtor in the attachment suit. No state can subject to its laws either real or personal property which is out of its jurisdiction. It is fundamental that in an attachment proceeding the *res* must be within the jurisdiction of the court issuing the process in order to confer jurisdiction.''

In *American Surety Company of New York* v. *Kasco Mills* (262 N. Y. 585) the following question was certified: '' Can a valid levy under a warrant of attachment be made on shares of stock of a domestic corporation, and the rights, interest and profits therein, owned by a non-resident defendant, for which a certificate is outstanding and in the possession of such defendant outside the State, and the transfer of which certificate by the holder has not been enjoined, by leaving a certified copy of the warrant and a notice showing the property attached with the treasurer of such corporation, without such certificate being actually seized by the officer making such attachment or levy? '' The question certified was answered in the negative.

The Court of Appeals in this State in *Douglass* v. *P. Ins. Co.* (138 N. Y. 209) held that a similar statute in the State of Massachusetts was invalid, in its operation, insofar as it affects residence and domestic corporations. I quote from the opinion: '' But it is a fundamental rule that in attachment proceedings the *res* must be within the jurisdiction of the court issuing the process, in order to confer jurisdiction. * * * In the case of movables their seizure under the attachment shows that

their actual situs is within the jurisdiction. But in respect to intangible interests, debts, choses in action, bonds, notes, accounts, interests in corporate stocks and things of a similar nature, the question whether the *res* is within the jurisdiction of the sovereignty where the process is issued, is not so readily determined. The general rule is well settled that the situs of debts and obligations is at the domicile of the creditor. But the attachment laws of our own and of other states recognize the right of a creditor of a non-resident to attach a debt or credit owing or due him by a person within the jurisdiction where the attachment issues, and to this extent the principle has been sanctioned that the laws of a state, for the purpose of attachment proceedings, may fix the situs of a debt at the domicile of the debtor. * * * But we repeat, no court can acquire jurisdiction in attachment proceedings unless the *res* is either actually or constructively within the jurisdiction, and we are of opinion that the attempt to execute an attachment in Massachusetts upon the debts owing to the plaintiff by the insurance company, by serving upon the agent of the corporation there, and without having acquired jurisdiction of the plaintiff, must fail for the reason that the debtor, the insurance company, was in no just or legal sense a resident of Massachusetts and had no domicile there, and was not the agent of the plaintiff, and that in contemplation of law the company and the debt were at the time of the issuing of the attachment in the state of New York, and not in the state of Massachusetts. This court has had occasion heretofore to consider the effect of the act of a foreign corporation constituting an agent in another state, upon whom proceedings may be served, done in compliance with the laws of such state in pursuance of a condition imposed, and to enable the corporation to do business in such state. It has been held that by such act the corporation does not change its domicile of origin or its residence. It becomes bound by judgments rendered upon service on the designated agent, because it has consented so to be bound, but it remains as before a resident of the state where it is incorporated. * * * If in this case the insurance company could be regarded as residing or having its domicile in Massachusetts for the purpose of attachment proceedings, it likewise has a domicile in every state where it may have appointed an agent under similar laws, and so constructively, upon the theory upon which the Massachusetts attachment is defended, the corporation is present as debtor to the plaintiff in every state where such agency exists, and the credit is also present at the same

time in each of such jurisdictions. The admission of such a principle would give rise to most embarrassing conflicts of jurisdiction and subject creditors of domestic corporations to great prejudice. We think the rule is that a domestic corporation at all times has its exclusive residence and domicile in the jurisdiction of origin, and that it cannot be garnisheed in another jurisdiction for debts owing by it to home creditors, so as to make the attachment effectual against its creditor in the absence of jurisdiction acquired over the person of such creditor.''

For the above reasons the garnishee execution is vacated.